UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, CHESAPEAKE CLIMATE ACTION NETWORK, FRIENDS OF THE EARTH, PACIFIC ENVIRONMENT, and THE SIERRA CLUB, <br><br>      Plaintiffs, <br>  v. <br><br>THE EXPORT-IMPORT BANK OF THE UNITED STATES and FRED HOCHBERG, in his official capacity as Chairman of the Export-Import Bank of the United States, <br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 13-1820 RC |

## DECLARATION OF DOUGLAS P. NORLEN

I, Douglas Peter Norlen, declare as follows:

1. The facts set forth in this declaration are based on my personal knowledge. If called as a witness in these proceedings, I could and would testify competently to these facts.

2. I am currently the Policy Director at Pacific Environment. I have worked for Pacific Environment since 1996, and I am familiar with the organization's history, structure, and activities. I am personally responsible for key programmatic and management decisions in the organization.

3. Pacific Environment is a 501(c)(3) non-profit corporation incorporated in California and headquartered in San Francisco.

4. Pacific Environment's mission is to strengthen democracy, support grassroots activism, empower local communities, and redefine international policies in order to protect the

1

living environment of the Pacific Rim.  Together with our partners, Pacific Environment has shielded tens of thousands of acres of old growth forest; won protections for endangered species; forced oil, gas, mining, and timber companies to heed local concerns; closed polluting factories along rivers; and changed the way some of the world's most powerful financial institutions work by advocating for more robust accountability mechanisms.  Pacific Environment mentors, trains, campaigns, builds networks, and provides direct financial support to activist leaders and non-governmental organizations to help them protect their communities from environmental and health threats.  Pacific Environment's support also helps these leaders and organizations to hold governments, corporations, and financing institutions accountable for their policies and actions.  Much of Pacific Environment's work has focused on environmental and health threats from fossil fuel-intensive energy projects, such as coal mining, transport, and combustion.

5. As part of Pacific Environment's broader mission, we seek to hold public finance institutions, particularly the Export-Import Bank of the United States ("Ex-Im Bank"), accountable to local communities and the environment by monitoring projects to ensure that public money is used to support best environmental protection practices.  Since 1997, Pacific Environment has sought to require financial institutions to adequately assess the environmental, social, and human health impacts of the fossil fuel projects they support.  Much of Pacific Environment's finance institution reform work has focused on Ex-Im Bank's social and environmental policies.

6. As Pacific Environment's Policy Director, I specialize in reforming multilateral trade and finance institutions, export credit agencies, and private banks' policies to increase environmental and social protections associated with their financing.  Over the past 15 years, I have advocated for stronger reforms during several revisions to Ex-Im Bank's policies, including

policies on the environment and accountability, and I have worked to strengthen international financing policies through negotiations at the Organisation for Economic Co-operation and Development (OECD).   I also spearhead Pacific Environment's efforts to pressure Ex-Im Bank to withdraw or condition funding for high-profile oil, mining, and natural gas projects.  Last year, I coordinated a joint submission from 11 civil society organizations to Ex-Im Bank on its implementation of a plan to restrict financing for coal plants abroad.

7. I am very familiar with Ex-Im Bank's charter, regulations, and environmental procedures, as I have advocated for many years for their reform.  These procedures are entirely inadequate to prevent damage to the environment and affected communities, and Ex-Im Bank's compliance with its environmental procedures has been abysmal.  In June 2011, I testified before the US Senate Banking Committee hearing on Ex-Im Bank's Congressional Reauthorization, highlighting necessary environmental policy reforms for the agency.

8. As part of our efforts to reform Ex-Im Bank financing decisions, in August 2012, we joined the Center for Biological Diversity and Turtle Island Restoration Network in a lawsuit challenging Ex-Im Bank's failure to comply with US environmental law in funding two large-scale LNG Projects in Australia (*Center for Biological Diversity v. Export-Import Bank of the United States*).  In addition, Pacific Environment is a designated plaintiff's representative in the *Friends of the Earth et.al. v. Larry Spinelli* settlement agreement with Ex-Im Bank, which requires Ex-lm Bank to increase its support for renewable energy and to conduct more robust, transparent environmental review of fossil fuel-intensive exports.

9. On May 24, 2012, Ex-Im Bank approved a $90 million loan guarantee to Xcoal Energy & Resources, LLC ("Xcoal") to support $1 billion in coal exports from Maryland and

3

Virginia to Japan, South Korea, China, and elsewhere.  Ex-Im Bank did not conduct environmental review of the impacts of this decision.

      10.    I have visited Baltimore ports, including areas adjacent to Xcoal's export terminal, as well as adjacent residential neighborhoods, and seeing the pollution there has made me even more concerned about the environmental and human health impacts of the Ex-Im Bank-financed Xcoal's activities.

      11.    Based on Ex-Im Bank's Charter, Ex-Im Bank's approval of the loan guarantee means Ex-Im Bank determined that without its guarantee, Xcoal would not have been able to secure sufficient financing for these exports to go forward.  Further, Ex-Im Bank's environmental procedures allow the Bank to consider and require mitigation of any project's impacts to air and water quality, wildlife, and protected areas.  I believe that, if the Ex-Im Bank had properly evaluated and considered the environmental impacts of the coal export activities, the Bank may have required mitigation, which would reduce harm to the environment.

      12.    Ex-Im Bank's failure to consider the environmental impacts of its decision to finance Xcoal's coal exports harms Pacific Environment by impeding its objectives of requiring financial institutions to increase their accountability and improve their environmental policies.  As a result, Pacific Environment will have to increase its resources for its advocacy to strengthen environmental requirements in Ex-Im Bank's policies.  Ex-Im Bank's failure to comply with the National Environmental Policy Act ("NEPA") also deprives Pacific Environment of the opportunity to provide timely comments to Ex-Im Bank on its decision to finance Xcoal's coal exports, and of information about the impacts of these coal projects, which Pacific Environment would use in its advocacy and public education efforts.

13. Pacific Environment is concerned that the agency will continue to fund major fossil fuel and mining projects throughout the world, including exports to Asia, without complying with NEPA. This will require Pacific Environment to devote additional resources to its work to promote environmentally responsible financing, including through monitoring Ex-Im Bank's financing policy and practice.

14. The declaratory and injunctive relief Pacific Environment seeks will redress these injuries by requiring Ex-lm Bank to conduct the environmental review that NEPA requires and allowing Pacific Environment to participate in the process leading to Ex-Im Bank's decision whether to approve the Xcoal loan guarantee.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on March 20, 2014 in Alameda County, California

*Doug Norlen*
Douglas P. Norlen